E. P. GATES v. THE STATE.

No. 5997.   Decided November 10, 1920.

1 —Prohibition—Selling Liquor—Misconduct of Jury—Defendant's Failure to Testify.

Where, upon trial of a violation on the prohibition law, the jury in their retirement alluded to the failure of defendant to testify and to other testimony not before the jury, the defendant not having testfied in the case, the same was reversible error.

2.—Same—Other Questions—Practice on Appeal.

Where, other matters complained of on appeal may not arise upon another trial, the same will not be discussed, neither will be the suggested reference as to a conflict between the Federal and the State law, as the judgment is reversed and the cause remanded on other grounds.

Appeal from the District Court of McLennan.   Tried below before the Honorable Richard I. Munroe.

Appeal from a conviction of a violation of the prohibition law; penalty, one year in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for a violation of the prohibition law enacted by the Thirty-Sixth Legislature. His punishment was assessed at one year in the penitentiary.

A bill of exceptions recites that after the jury retired evidence other than that introduced on the trial of a material and injurious nature was received by the jury, the same being with reference to the failure of the defendant to testify, and with reference to his character, in that he had been selling whisky for a number of years, and that if the jury turned defendant loose he would follow the same practice. This is made a ground of the motion for new trial, and is

supported by a bill of exceptions, including the testimony taken before the court bearing upon the matter set out.

Juror Goodman testified that there were statements made that Mr. Gates had nothing to offer to defend himself; that he did not get up to defend his own self, and that he must be guilty.   Goodman himself did not say that, but he heard the remark that defendant did.not defend himself in the case, and, therefore, he must be guilty.   He further says: "As to whether or not there was anything said about Gates not getting on the stand and saying that he did not do it, that is exactly the point, that he did not get up and say that he did not do it.   His reputation was discussed several times.   In the jury box they suggested that I be the foreman and I turned it over to another man, and I stated that it was best for everyone to state his views, and they began and two or three said 'he is guilty' and that they would not stand for anything else, and others claimed that on account of the character of the witnesses who testified the testimony was not sufficient to convict Mr. Gates.   I suggested that that was my view, that according to the character of the evidence it did not prove that Gates sold that whisky—selling it to a Mexican, and others spoke the same way.   Of course, every one had a vote, and the vote was seven to five, seven for acquittal and five for conviction; really there were three for conviction and two on the fence, but the vote was five to seven, and we started an argument, and one of them said that Gates had been doing that for ten years and would do the same thing again.   He was a young fellow, I don't know his name.   He said that Gates had been doing that ten years more or less, and if we turned him loose he would do the same thing.   I stated that that would not have anything to do with the case.   Mr. Jones said that he would hang the jury to turn Mr. Gates loose.   Another said he would do the same thing; said he would see hell freeze over before he would give over.   I did not make any suggestions that way; I had business to attend to.   I told them I would hang the jury according to my views.   We started to talking and one said we ought to give him four years, another said three years, and so on, and I suggested that we try to compromise, that the judge might keep us five or six days, and they said before they would stay five or six days they would agree.   Some said they could not stay five or six days.   They never did say they thought he was guilty.   The way I looked at the corroborating evidence of the little girl is that she had to do what her mother said, and she did not make much of a witness, and I did not think the telephone conversation was sufficient to convict."   On cross-examination this witness said: "I voted for a conviction of Mr. Gates.   After the compromise all the jurors voted for his conviction.   We returned a verdict into court finding him guilty and assessing his punishment in the penitentiary for one year.   We all voted that way, and all agreed at the time to do it.   As to whether the jurors discussed the fact that Gates did not take the stand, or the fact that no defense

testimony was offered, it was that Gates did not offer any testimony
to show that he was innocent; they did not exactly say that he did
not take the stand, but that he did not make any defense. We did
not make the remark that Gates did not take the stand. The only
thing discussed was that Mr. Gates must be guilty because he did not
show he was innocent. They did not mention that he did not take the
stand. I remember the charge of the court that we could not discuss
the fact that defendant did not take the stand, but I could not stop
them; they made that remark just the same. Q. What remark? A.
They said that if he was turned loose he would do the same thing over,
because he had been at it for ten years more or less.''

Mr. Reagan, another juror, testified: ''I heard a juror make the
remark that he had been knowing Gates for ten years and that he
had been doing this that long and if we turned him loose he would do
it again. Mr. Long made that remark. I don't know anything about
anything being said in the jury room before the court ordered us to
go back and rewrite our verdict about agreeing to a verdict and mak-
ing an application for his pardon. I don't know just what was said
about the court might hold us for a considerable length of time. It
was referred to a vote and the majority was to rule. The majority
was in favor of conviction, and we all agreed to a verdict because
the majority was in favor of it, and under that state of facts I
rendered my verdict. I was for acquitting Gates; I did not think
the corroborating evidence was sufficient, but we left it to a vote of the
majority and the majority showed up in favor of conviction. I think
there was something said about Mr. Gates not producing any testi-
mony, but I don't remember who said it. I think the remark was
made that if the defendant was not guilty he would have proven
himself innocent. It is a fact that that was said. Something was
said about Mr. Gates not being put on the stand and they did not see
why. I do not recall the name of any juror that said that, but know
that it was said.'' Further answering on cross-examination he said:
''I do not remember just what was said; I know it was discussed in the
jury room why he did not take the stand.''

The juror Britton testified that he voted for a conviction. He
says he did not remember hearing any discussion in the jury room
as to why defendant did not take the stand. On cross-examination
he says: ''I don't think there was anything said by anybody else
about Gates himself not taking the stand. I mentioned the fact my-
self, but don't remember whether I said something about why Gates
did not take the stand, or why he did not introduce some testimony.
I said in the jury room that Gates had been doing that kind of business
for some time, but did not mention ten years.''

Another juror testified that it was mentioned in the jury room by
some one that Mr. Gates had been in the business before, but he did
not know whether it was Mr. Britton or not. ''I don't recall any such
statement as that if he was not convicted he would go at it again.

. . . There was no one on the stand during the trial to prove his reputation. I could not say how many jurors mentioned his reputation; I think probably two of them said something about it; I think there was that many that mentioned it. I did not say anything about it; I did not know anything about it.

The above is practically the substance of the testimony introduced in regard to the motion for new trial bearing on these questions. We are of opinion, under all the circumstances stated, that this was such misconduct on the part of the jury as to require this court to reverse the judgment. Appellant had not taken the stand, nor had he introduced any evidence. The case went to the jury on the State's evidence. There was no evidence introduced as to his reputation, or his former business, or any of those matters mentioned by the jury in their retirement. It is evident from the statements of the jurors that when they retired they stood seven for acquittal and five for conviction, but for some reason the seven changed their sentiment and voted for conviction, and it seems after these statements by the jurors had been made.

The other matters complained of may not arise upon another trial, and, therefore, are not discussed.

The question suggested with reference to a conflict between the Federal and State law will not be discussed in this opinion inasmuch as we reverse the judgment upon the other matter. There are other cases pending in which the matter will be fully discussd.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*